UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARK CLAYTON, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    No. 3:13-01211 |
| | )    **Judge Sharp** |
| CHIP FORRESTER, *et. al*, | ) |
| | ) |
|     **Defendants.** | ) |

## MEMORANDUM

Magistrate Judge Brown has entered a Report and Recommendation ("R & R") (Docket No. 130), recommending that Plaintiff's claims under the Voting Rights Act of 1965 be dismissed for failure to state a claim, and that his state law claims be remanded to the Circuit Court for Davidson County, Tennessee. Plaintiff has filed Objections (Docket No. 134) to the R & R, to which Defendants have responded in opposition (Docket No. 141). Additionally, a number of other Motions have been filed since the issuance of the R & R, all of which the Court now considers.

### I. R & R (Docket No. 130), Objections (Docket No. 134) , and Response (Docket No. 140)

In the R & R, Magistrate Judge Brown recommends dismissal of the Voting Rights Act claim for two reasons. First, Plaintiff "failed to specifically allege, or state facts sufficient to infer, that any voter, or group of voters was prevented from voting," and that, even liberally construed, his complaint "is that defendants' efforts to disavow him caused some voters that cast their ballots for him in the primary election to cast their votes for other candidates in the general election." (Docket No. 130 at 5). Second, and more fundamentally, Plaintiff does not allege "facts that would infer action by 'any State or political subdivision thereof'" as required by 42 U.S.C. § 1973(a). (Id.).

1

With regard to Plaintiff's state law claims, Magistrate Judge Brown concluded that "comity and fairness weight heavily in favor of remand," writing:

> Governance of a state's political process and control over its political parties is an area of grave importance to the State. This is particularly so where, as here, the legislature has dictated both the form and forum of squabbles over internal party decisions. Of only slightly less import is fairness. As the master of his complaint, Plaintiff initially chose "to have the cause heard in state court" and that cause is only here based upon defendants' removal on the basis of his claims under the Act which should be dismissed.

(Id. at 6).

Plaintiff lists 19 objections to the R & R, some with subparts, and many that overlap. The Court has thoroughly considered all of Plaintiff's objections and notes the following.

Plaintiff begins by arguing that "the US [sic] District Court may not dismiss and refuse to render judgement [sic] on the Voting Rights Act Claim unless there [sic] terminates no uncertainty or controversy," (Docket No. 134 at 1), citing Tenn. Code Ann. § 29-14-109 for that proposition. That statutory provision provides:

> The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceedings.

Id. But the statute uses the term "may" and, as such, "whether to entertain a declaratory judgment action . . . is largely discretionary with the trial judge." State ex rel. Earhart v. City of Bristol, 790 S.W.2d 948, 954 (Tenn. 1998). Besides, "the court" in the statute is a reference to state, not federal courts. Likewise, Tenn. Code Ann. § 29-14-102, which Plaintiff quotes in his sixth objection, and which states that "[c]ourts of record within their respective jurisdictions have the power to declare rights," is a reference to state circuit and chancery courts.

Citation to state declaratory relief statutes aside, Plaintiff argues

2

> The US [sic] District Court is also required, if it is to pass judgment on the Voting Rights Act, to explain what constitutes all action necessary to make votes effective . . . and iterate whether or not . . . Defendants and/or agents took all action to make the votes of the 2012 Democratic US [sic] Primary effective and to describe what that entails.
>
> If Title 2 is not protected by the Voting Rights Act, the US [sic] District Court should explain why. If Title 2 board members and/or their agents are not required to take all action necessary to make votes effective in primaries, then the US [sic] District Court should explain why. The US [sic] District Court should also explain whether or not all efforts to make votes effective took place.

(Docket No. 134 at 2, Obj. 1 & at 2-3, Obj. 3). Plaintiff also raises a myriad of rhetorical questions in other objections, such as whether he is "in fact a bonafide Democrat"; whether he committed "some type of fraud by running for office"; whether there are "any squabbles in this case" and, if so, "what is the legal definition of 'squabbles'"?; and "what [does] disavow mean as a matter of law and how [does] 'disavow' applies to the facts of this case"? (Id. at 4-5, Obj. 6; and at 9, Obj. 13). However, answering such questions goes far beyond the scope of the issue of whether Plaintiff has stated a claim upon which relief can be granted, and Article III of the Constitution prohibits advisory opinions. Wheeler v. City of Lansing, 660 F.3d 931, 940 (6th Cir. 2011); Arnett v. Myers, 281 F.3d 552, 562 (6th Cir. 2002). With the decision that the Voting Rights Act claim fails and the state law claims should be dismissed, there is no justiciable case or controversy before the Court, and no basis upon which to answer Plaintiff's questions.

Plaintiff, "a [C]aucasian voter," reads the R & R as saying that the Voting Rights Act only applies to minorities. (Docket No. 134 at 3, Obj. 5). This is an improper reading of the R & R, as it says no such thing. See Shelby Cnty. v. Holder, ___ U.S. ___, 133 S.Ct. 2612, 1659 (2013) (Section 2 of the Voting Rights Act "forbids any 'standard, practice, or procedure' that 'results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or

3

color").

Plaintiff also argues that the R & R should have recommended dismissal of "Defendants' affirmative First Amendment Defense." (Id. at 4, Obj. 5). However, no Answer has been filed which would have contained affirmative defenses and, in any event, the question before the Magistrate Judge and now before the Court is whether Plaintiff has stated a federal claim upon which relief can be granted, not whether Defendants have a viable defense.

Plaintiff further contends Magistrate Judge Brown erred by failing to apply the "mandatory doctrine of judicial estoppel, to defendants' multiple inconsistent positions, particularly that plaintiff is not a *bona fide* democrat and was not a *bona fide* democrat during 2012[.]" (Id. at 5, Obj. 7). But whether Defendants have taken inconsistent positions and, for that matter, whether Plaintiff is or is not a "bona fide" Democrat, has nothing to do with whether an action was taken by a State or political subdivision that prevented voters from voting. Likewise, whether or not Plaintiff is upset about losing votes, and whether he visited the Democratic Party Headquarters to demand documentation, rather than to complain (id. at 7-8, Obj. 8 & 9) has no bearing on whether dismissal for the reasons recommended is appropriate.

Plaintiff claims that he "pusues [sic] rights and remedy against all Defendants *res ipsa loquiter*" [sic] and, therefore, Magistrate Judge Brown's statement about "the powers that be" was improper because if the Court "cannot yet determine who an actor is . . . it should pursue the Defendants [sic] identity under *res ipsa loquiter* [sic] before ascribing a name 'powers that be' which make it impossible to determine the actor." (Id. at 9, Obj. 12). The Court does not understand what a tort doctrine relating to breach of duty and care has to do with Plaintiff's claims, but it was not improper for Magistrate Judge Brown to write that "the powers that be within the

4

Tennessee Democratic Party . . . began a write-in campaign to disavow and discredit Plaintiff," (Docket No. 130 at 1), when Plaintiff specifically alleged that "Defendants and/or their agents sent out a communique via their official blog 'disavowing' the candidacy of Plaintiff" (Docket No. 34 at 6, Am. Cmp. ¶ 24).

Plaintiff further complains that Magistrate Judge Brown ignored the authorities Plaintiff cited and, in particular, "*Smith v. Allwright*." (Id. at 11, Obj. 15). Presumably this is a reference to Smith v. Allwright, 321 U.S. 649 (1944), an inapposite case which found unconstitutional the Texas Democratic Party's rule limiting participation in its primary to whites. It, together with Terry v. Adams, 345 U.S. 461 (1953), "held only that, when a State prescribes an election process that gives a special role to political parties, it 'endorses, adopts and enforces the discrimination against Negroes' that the parties . . . bring into the process—so that the parties' discriminatory action becomes state action under the Fifteenth Amendment." Cal. Democratic Party v. Jones, 530 U.S. 567, 573 (2000) (quoting Allwright, 345 U.S. at 664). Those cases "do not stand for the proposition that party affairs are public affairs, free of First Amendment protections[.]" Id. To the contrary, "[r]epresentative democracy in any populous unit of governance is unimaginable without the ability of citizens to band together in promoting the electorate candidates who espouse their political views," and "[i]n no area is the political association's right to exclude more important than in the process of selecting its nominee." Id.

Plaintiff also argues that "Tenn. Code Ann. § 2-14-104(c) is irrelevant to this case as it pertains to a removal statue which defendants did not initiate[.]" (Id. at 11, Obj. 16). The Court finds no such statutory provision in the Tennessee Code, nor any such citation in the R & R. Magistrate Judge Brown once cited 2-17-104(c), but that was because Judge Echols cited that

5

statutory provision in Kurita v. State Primary Bd., 2008 WL 4601574, at *7 (M.D. Tenn. Oct. 14, 2008) to support the proposition that "[t]he power to select a nominee for a political party has never been reserved traditionally and exclusively to the State of Tennessee"; rather, "the Tennessee General Assembly expressly disclaimed any role of state government in resolving party nomination contests and instead reserved power exclusively to the political party to choose the nominee whose name will appear on the general election ballot."

Finally, Plaintiff argues it would be improper "to remand this case without direct supervision over which judge hears this case," because, in the absence of any direction, it will be assigned to Judge Brothers who is allegedly the "go to judge" for Defendants' cases. (Docket No. 132 at 10, Obj. 14). Plaintiff then goes on to make comments about Judge Brothers and his alleged relationship with Defendants and their counsel, and further claims his life could be in danger were the case assigned to Judge Brothers. (Id. at 10-11, Obj.14). This objection needs only the curtest of responses: (1) this Court has no power to direct which state judge will hear this case on remand; (2) Plaintiff's fear that his safety will somehow be jeopardized by the state court judge and defense counsel is baseless; and (3) his accusations are spurious and ill-advised.

Although the Court usually finds it unnecessary to address responses to objections, the Court does so here because Defendants have requested affirmative relief in their response.

Defendants contend that the R & R should be modified by dismissing Plaintiff's state law claims, instead of remanding them to state court. They argue that Plaintiff has made clear his distrust of the state courts though his objections, and dismissing the action at this juncture will "put this matter fully to rest" and save Defendants further expense. This latter rationale (about closure and the reduction of costs) existed at the time the R & R was issued and, as such, Defendants should

6

have objected and sought modification within the fourteen-day limit set forth in the R & R and Rule 72(b)(2) of the Federal Rules of Civil Procedure.

Regardless, how Plaintiff feels about litigating in state court is not germane to the question of whether the state law claims should now be remanded. District courts have "broad discretion" under 28 U.S.C. § 1367 in determining whether to exercise supplemental jurisdiction, a discretion which is guided by "several factors, including the 'values of judicial economy, convenience, fairness and comity.'" Gamel v. City of Cincinnati, 625 F.3d 949, 951-52 (6th Cir. 2010) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

The Court agrees with Magistrate Judge Brown that it is best to remand the state law claims. The case before the Court has proceeded only to the motion to dismiss stage, and all but one of the remaining claims will require application of Title 2 of the Tennessee Code, which is best addressed by a state court.

In their response, Defendants also requests sanctions pursuant to this Court's inherent power or pursuant to 28 U.S.C. § 1927. The requested sanctions will be denied.

Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Given that the statute refers to "[a]n attorney or other person admitted to conduct cases," some doubts have been expressed as to whether a party appearing *pro se*, like Plaintiff here, can be sanctioned under the statute. See Feingold v. Graff, 516 F. App'x 229, n.9 (9th Cir. 2013) ("we express doubt as to whether 28 U.S.C. § 1927 may be applied to non-lawyer, pro se litigants

. . . and we need not decide this difficult issue now"); Modelist v. Miller, 445 F. App'x 737, 742 (5th Cir. 2011) ("we leave open the question of whether § 1927 sanctions can be imposed against a *pro se* litigant"); Hall v. Liberty Life Assur. Co., 595 F.3d 270, 275 (6th Cir. 2010) (district court erred in looking at client's financial ability to pay "because the statute authorizes the imposition of sanctions only on 'any attorney or other person admitted to conduct case'"). Regardless, whether to award sanctions under Section 1927 rests within the discretion of the Court, and while Defendants request sanctions because of Plaintiff's diatribe in his objections, the Court does not believe that his objections so multiplied the proceedings as to make an award of sanctions under Section 1927 appropriate.

Defendants' request for sanction based on this Court's inherent power presents a much closer question. Given Magistrate Judge Brown's March 13, 2014 Order (Docket No. 105) threatening sanctions and warning all sides "to knock off the inappropriate language," Plaintiff certainly knew better than to cast vitriolic aspersions in his objections, such as describing a "corrupt state judicial environment, void of justice and full of political intrigue[.]" (Docket No. 134 at 13-14). "Nevertheless, the district court should exercise its inherent authority to impose sanctions with restraint and discretion." Murray v. City of Columbus, 534 F. App'x 479, 485 (6th Cir. 2013) (citing, Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)). The Court does so here by declining to award sanctions but reiterating Magistrate Judge Brown's observation that Plaintiff's assertions are "quite frankly . . . juvenile and totally inappropriate." (Docket No. 105 at 1).

## II. Motions to Strike (Docket Nos. 148 & 150)

Plaintiff has moved to strike Defendants' response to his objection because the response was not filed until 28 days after the R & R issued, and "[i]f the Defendant wanted to object to the Report

8

and Recommendation that this case be remained" they should have done so within 14 days. (Docket No. 148 at 1). Striking Defendants' response is not the appropriate remedy and this Court has already determined that it will remand the case, Defendants' objection thereto, notwithstanding.

Defendants move to strike Plaintiff's Notice of Tolling and Equitable Tolling. However, as Defendants themselves note, the notice "does not actually request that this Court take any action." (Docket No. 150 at 1).

Accordingly, both Motions to Strike will be denied.

### III. Motion for Service Order and Rule 83.03 Sanctions (Docket No. 153)

Plaintiff moves for sanctions based upon statements defense counsel allegedly made in related state court proceedings, including that Plaintiff "is affiliated with a group the Southern Poverty Law Center identifies as a 'hate group,' and as is clear from reading Plaintiff's pleadings in this and other cases, he seems to have only a loose connection with reality." (Docket 154 at 1). This Motion will be denied.

Even assuming counsel's comments made in argument are sanctionable, the "Service Order" in which Magistrate Judge Brown admonished the parties to remain civil applies to filings and actions in this case; conduct in state court is for the state judge to police. Local Rule 83.03, upon which Plaintiff also relies, is inapplicable because it addresses "extrajudicial" statements that might interfere with a fair trial.

### IV. Motion for *De Novo* Determination and Hearing (Docket No. 156)

In this Motion, Plaintiff claims that he "disagrees with and has always disagreed with the Magistrate Judge's finding or assertion that the Plaintiff agreed, orally, to withdraw his motion in Dkt. 20 and 22 during a scheduling hearing on December 30, 2013." (Docket No. 156). The

9

referenced "motion" is Plaintiff's Motion for a Preliminary Injunction and accompanying memorandum.

In an Order issued the same day as the scheduling hearing, Magistrate Judge Brown wrote:

> After discussion with the parties the Plaintiff agreed to **withdraw** this motion without prejudice to being refiled once he has had an opportunity to consider the matters discussed in court. The Magistrate Judge did opine that, to the extent that he had to provide a report and recommendation on the motion for preliminary injunction, he would have great difficulty in finding that an injunction was needed to prevent irreparable harm, given that the election was completed in 2012 and it does not appear that the Plaintiff is involved in an active election at this point.

(Docket No. 31 at 4) (emphasis in original). If Plaintiff disagreed with the assertion that he had withdrawn his request for preliminary relief, his objection was required to be lodged "within 14 days" and "[a] party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a).

Plaintiff also argues that this Court "should have been the one to exercise authority to decide whether or not to issue the subpoenas" requested by Plaintiff. (Docket No. 156 at 1). However, 28 U.S.C. § 636(b)(1)(A) specifically provides that a "judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court," and this Court's Local Rule 16.01 provides for oversight by the "case management judge."

Finally, Plaintiff requests that a three judge panel (ostensibly pursuant to requirements of the Voting Rights Act) "rule that Dkt. 20 and 22 are and have always been throughout the process active and never withdrawn, and that the subpeones [sic] as requested in Dkt. 132 and 143 be issued to Plaintiff for service of process[.]" (Docket No. 156 at 2). But determining whether a motion has been withdrawn or subpoenas should be issued is not something for a three-judge panel, particularly since Plaintiff has not stated a cognizable claim under the Voting Rights Act. See 28 U.S.C. § 2284

(requiring three judge panel where challenge is to constitutionality of congressional district or statewide legislative body but, even then, "a single judge may conduct all proceedings except the trial and enter all orders permitted by the rule of civil procedure"); Kreiger v. Loudon Cnty., 2014 WL 4923904, at *5 (W.D. Va. Sept. 30, 2014) ("the plain language of 52 U.S.C. § 10101" of the Voting Rights Act which requires three judge panels "expressly limits its application to discrimination based on 'race, color, or previous condition of servitude' and discrimination against 'language minorities.'").

## V. Conclusion

The Court will enter an Order confirming the foregoing rulings.

_____
KEVIN H. SHARP
CHIEF UNITED STATES DISTRICT JUDGE